## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER BARLOW, AUDREY CANDELARIO, LAURA HABBERFIELD, GREGORY SHAROFSKY, and BRIAN STIEHLER, individually and on behalf of all others similarly situated, | CASE NO.: |
| Plaintiffs, | |
| v. | (Jury Trial Demanded) |
| GEICO CORPORATION, GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO INDEMNITY COMPANY, | |
| Defendants. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Peter Barlow, Audrey Candelario, Laura Habberfield, Gregory Sharofsky, and Brian Stiehler ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through the undersigned counsel, bring this Class Action Complaint against GEICO Corporation ("GEICO Corp."), Government Employees Insurance Co. ("Government Employees"), Geico General Insurance Co. ("GEICO General"), and Geico Indemnity Co. ("GEICO Indemnity") (collectively "GEICO" or "Defendants"), and assert upon personal knowledge as to their own acts and status, and upon information and belief as to all other matters, the following allegations:

### I. NATURE OF THE ACTION

1. Plaintiffs bring this lawsuit on behalf of themselves and the below-defined Class and Subclasses (collectively, the "Class") who were insured under Defendants' private passenger

auto ("PPA") physical damage policies and were not paid the full amount of the Actual Cash Value contractually promised by Defendants after suffering a total loss to their insured vehicle.

2.       Plaintiffs were insured under Defendants' insurance policies for PPA physical damage.  The GEICO policy form for PPA physical damage (known as form A-30NY), which applied to Plaintiffs and all Class members, is attached as Exhibit A (hereinafter referred to as the "GEICO Policy.").

3.       The GEICO Policy requires payment on first-party total loss physical damage claims of Actual Cash Value ("ACV"), which is defined by the GEICO Policy as "the replacement cost of the auto or property less depreciation or betterment."  (Ex. A, Policy form, at 35) (emphasis added.)

4.       The payment of sales tax is required in New York in connection with the purchase of any vehicle, and therefore part of the replacement cost of any vehicle.  Sales tax is owed on the total-loss vehicle value ("TLVV"). GEICO, however, does not pay TLVV sales tax on many first-party total loss claims in New York.

5.       Further, GEICO does not pay title and license plate (AKA "tag") transfer fees on any first-party total loss claims in New York.  Like sales tax, title and tag transfer fees are mandatory, and are costs that are necessarily incurred in New York in connection with the purchase of a replacement vehicle.  Title and tag are part of the replacement cost of any vehicle.

6.       Plaintiffs and the other Class members suffered total losses of their vehicles, and Defendants purported to pay them Actual Cash Value in settlement of their claims.

7.       Defendants, however, failed to pay sales tax, and title and tag transfer fees, to Plaintiffs and the other Class members, and thereby breached their contracts with Plaintiffs and other Class members.

8.      As a result of Defendants' conduct, Plaintiffs and the other Class members were damaged in an amount to be determined at trial or as a matter of law.

## II.      JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states, and because (a) Plaintiffs are members of the Class, which consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

10.      Venue is proper in this District because a substantial portion of the acts and conduct giving rise to Plaintiff Candelario's claim occurred within the District and Defendants are subject to personal jurisdiction in this District.

## III.      THE PARTIES

*Plaintiffs*

11.      Plaintiff Peter Barlow is an adult who, at all relevant times, resided in and was domiciled in Tompkins County, New York.  Plaintiff Barlow is and was the holder of a GEICO Policy issued by Defendant GEICO Indemnity.

12.      Plaintiff Audrey Candelario is an adult who, at all relevant times, resided in and was domiciled in Kings County, New York.  Plaintiff Candelario is and was the holder of a GEICO Policy issued by Defendant Government Employees.

13.      Plaintiff Laura Habberfield is an adult who, at all relevant times, resided in and was domiciled in Erie County, New York.  Plaintiff Habberfield is and was the holder of a GEICO Policy issued by Defendant GEICO General.

14.     Plaintiff Gregory Sharofsky is an adult who, at all relevant times, resided in and was domiciled in Rockland County, New York.  Plaintiff Sharofsky is and was the holder of a GEICO Policy issued by Defendant GEICO General.

15.     Plaintiff Brian Stiehler is an adult who, at all relevant times, resided in and was domiciled in Monroe County, New York.  Plaintiff Stiehler is and was the holder of a GEICO Policy issued by Defendant GEICO General.

***Defendants***

16.     At all times material hereto, Defendant Government Employees is and was a foreign corporation incorporated in Maryland, headquartered at 5620 Western Avenue, Chevy Chase, Maryland, and authorized to provide insurance in the State of New York.

17.     At all times material hereto, Defendant GEICO General is and was a foreign corporation incorporated in Maryland, headquartered at 5620 Western Avenue, Chevy Chase, Maryland, and authorized to provide insurance in the State of New York.

18.     At all times material hereto, Defendant GEICO Indemnity is and was a foreign corporation incorporated in Maryland, headquartered at 5620 Western Avenue, Chevy Chase, Maryland, and authorized to provide insurance in the State of New York.

19.     At all times material hereto, Defendant GEICO Corp. is and was a foreign corporation incorporated in Maryland, headquartered at 5620 Western Avenue, Chevy Chase, Maryland.

## IV.  FACTUAL BACKGROUND

### A.  *The GEICO Insurance Policy*

20.    The GEICO Policy, which is materially identical for Plaintiffs and all putative Class Members, provides that for "Collision" and "Comprehensive" coverages, GEICO will pay for each "loss" to an "owned auto" or "non-owned auto":

> **Comprehensive (Excluding *Collision*)**
> 1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision*, to the *owned* or *non-owned auto*.  This includes breakage of glass and *loss* caused by:
>
> *Collision*
> 1. We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

21.    The GEICO Policy defines "owned auto" as including any vehicle described in the GEICO Policy for which a specific premium charge indicates there is coverage:

> 6. *Owned auto* means:
>    (a) A vehicle described in this policy for which a premium charge is shown for these coverages:

22.    The GEICO Policy defines "Loss," with respect to "Collision" and "Comprehensive" coverage, as "direct and accidental loss of or damage to (a) The auto, including its equipment; or (b) Other insured property":

> 7. *Loss* means direct and accidental loss of or damage to:
>    (a) The auto, including its equipment; or
>    (b) Other insured property.

23.    The GEICO Policy represents that the limit of GEICO's liability for loss, with respect to "Collision" and "Comprehensive" coverage, is "the actual cash value of the property at the time of the loss":

> **LIMIT OF LIABILITY**
> The limit of our liability for *loss*:
> 1. Is the *actual cash value* of the property at the time of the *loss*;

24.     "Actual cash value" is defined in the GEICO Policy, with respect to "Collision" and "Comprehensive" coverages, as "the replacement cost of the auto or property less depreciation or betterment":

> 1.  *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment*.

25.     Under the GEICO Policy, GEICO's legal obligation to pay Actual Cash Value on a first-party total loss claim does not differ between a Collision total loss claim and a Comprehensive total loss claim.

26.     For both Collision total loss claims and Comprehensive total loss claims, GEICO expressly agrees to pay the ***replacement cost*** of the auto.

27.     The GEICO Policy *does not* further define Actual Cash Value as:  (a) excluding the cost of taxes or fees from Actual Cash Value; (b) deferring payment of the cost of taxes or fees for any purpose whatsoever; (c) requiring an insured to obtain a replacement vehicle; (d) requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving the cost of taxes or fees; or (e) linking the amount of taxes or fees to a particular replacement vehicle and the corresponding state or local regulatory fees on said replacement vehicle.

28.     Upon information and belief, each Class member was insured under GEICO policies that were materially identical with respect to GEICO's obligation to pay "Actual Cash Value" in the event of a total loss.

**C.     *GEICO Does Not Pay the Agreed-Upon Replacement Costs***

29.     Sales tax, title transfer fees, and tag transfer fees are necessary and mandatory vehicle replacement costs in the State of New York.

30.     New York law requires that all vehicles be properly titled in order to be legally driven on New York roadways.  *See* N.Y. VEH. & TRAF. § 2104.  New York requires the seller of

the vehicle to issue an assignment or warranty of title to the buyer. *See* N.Y. VEH. & TRAF. § 2113-14.  The buyer then uses the assigned title to make application for a new title in his or her own name.  *Id.* at 2113(b). The fee imposed for filing an application for a certificate of title is $50.  *See* N.Y. VEH. & TRAF. § 2125.

31.     New York law requires that all vehicles have proper license plates (or tags) in order to be legally driven on New York roadways.  *See* N.Y. VEH. & TRAF. § 401.  The fee to transfer license plates or tags is $10.  *See* N.Y. VEH. & TRAF. § 420.

32.     By providing that they will pay Actual Cash Value in the event of a total loss, Defendants, through the GEICO Policy, promise to pay these mandatory vehicle replacement costs – sales tax, title fees, and tag fees – as part of its Collision and Comprehensive coverages

33.     Defendants, however, by their conduct alleged herein, breached their contracts with Plaintiffs and the other Class members by failing to pay sales tax, title transfer fees, and/or tag transfer fees upon the total loss of an insured vehicle.

34.     The aforementioned scheme—promising to provide the cost of replacement (minus depreciation) but declining to actually do so—is a common scheme implemented by GEICO Corp. in a uniform and identical manner across all GEICO entities.

**D**.     ***GEICO Failed to Pay Plaintiffs the Actual Cash Value to Which They Were Entitled***

35.     Plaintiff Barlow owned a 2009 VW JETTA TDI, insured through a GEICO Policy issued by Defendant Geico Indemnity.

36.     On or about September 18, 2015, Plaintiff Barlow was involved in an accident while operating the insured vehicle.  As a result of that accident, Plaintiff Barlow filed a property damage claim with Defendant GEICO Indemnity.

37.     Following the filing of his claim, GEICO determined that Plaintiff Barlow's vehicle was a total loss with an underlying value of $11,521.  A copy of GEICO's Total Loss Explanation Letter to Plaintiff Barlow is attached as Exhibit B hereto.

38.     The underlying value was calculated by a third-party vendor ("CCC"), which bases vehicles' valuations on the cost to purchase similar vehicles with similar conditions and mileage.

39.     GEICO Indemnity paid the underlying value of the vehicle, but did not pay the costs of sales tax, title transfer fees, or tag transfer fees—each of which is, under applicable law, an inextricable part of a vehicle purchase and costs which GEICO was contractually obligated to pay.

40.     Plaintiff Barlow was owed the cost of a title transfer fee in the amount of $60 and tag transfer fees in the amount of $10.

41.     The sales tax in Tompkins County, New York at the time of Plaintiff Barlow's accident was 8%. Thus, Plaintiff Barlow was also owed sales tax in the amount of $921.68.

42.     GEICO breached its contract with Plaintiff Barlow by not including the cost of sales tax, title transfer fees, or tag transfer fees in making the Actual Cash Value payment for Plaintiff Barlow's total loss.

43.     Plaintiff Candelario owned a 2006 HONDA CIVIC EX, insured through a GEICO Policy issued by Defendant Government Employees.

44.     On or about September 25, 2016, Plaintiff Candelario was involved in an accident while operating the insured vehicle.  As a result of that accident, Plaintiff Candelario filed a property damage claim with Defendant Government Employees.

45.     Following the filing of his claim, Government Employees determined that Plaintiff Candelario's vehicle was a total loss with an underlying value of $8,090.  A copy of GEICO's Total Loss Explanation Letter to Plaintiff Candelario is attached as Exhibit C hereto.

46.     The underlying value was originally calculated by third-party vendor, CCC.

47.     GEICO paid Plaintiff Candelario sales tax in an amount of $678.72, but did not pay the costs of title transfer fees or tag transfer fees—both of which are, under applicable law, an inextricable part of a vehicle purchase and costs which GEICO was contractually obligated to pay.

48.     Plaintiff Candelario was owed the cost of a title transfer fee in the amount of $50 and tag transfer fees in the amount of $10.

49.     GEICO breached its contract with Plaintiff Candelario by not including the cost of title transfer fees or tag transfer fees in making the Actual Cash Value payment for Plaintiff Candelario's total loss.

50.     Plaintiff Habberfield owned a 2012 HONDA Civic Sedan EX Automatic, insured through a GEICO Policy issued by Defendant GEICO General.

51.     On or about November 21, 2018, Plaintiff Habberfield was involved in an accident while operating the insured vehicle.  As a result of that accident, Plaintiff Habberfield filed a property damage claim with Defendant GEICO General.

52.     Following the filing of his claim, GEICO determined that Plaintiff Habberfield's vehicle was a total loss with an underlying value of $9,465.  A copy of GEICO's Total Loss Explanation Letter to Plaintiff Habberfield is attached as Exhibit D hereto.

53.     In paying the claim, GEICO did not pay the costs of title transfer fees or tag transfer fees.

54.     Plaintiff Habberfield was owed the cost of a title transfer fee in the amount of $50 and tag transfer fees in the amount of $10.

55.     GEICO breached its contract with Plaintiff Habberfield by not including the cost of title transfer fees or tag transfer fees in making the Actual Cash Value payment for Plaintiff's total loss.

56.     Plaintiff Sharofsky owned a 2009 HYUNDAI Elantra GLS Automatic, insured through a Policy issued by Defendant GEICO General.

57.     On or about January 1, 2018, Plaintiff Sharofsky was involved in an accident while operating the insured vehicle.  As a result of that accident, Plaintiff Sharofsky filed a property damage claim with Defendant GEICO General.

58.     Following the filing of his claim, GEICO determined that Plaintiff Sharofsky's vehicle was a total loss with an underlying value of $3,988.00.  A copy of GEICO's Total Loss Explanation Letter to Plaintiff Sharofsky is attached as Exhibit E hereto.

59.     In paying the claim, GEICO did not pay the costs of title transfer fees or tag transfer fees.

60.     Plaintiff Sharofsky was owed the cost of a title transfer fee in the amount of $50 and tag transfer fees in the amount of $10.

61.     GEICO breached its contract with Plaintiff Sharofsky by not including the cost of title transfer fees or tag transfer fees in making the Actual Cash Value payment for Plaintiff Sharofksy's total loss.

62.     Plaintiff Stiehler owned a 2012 Chevrolet Camaro LT1, insured through a Policy issued by Defendant GEICO General.

63.     On or about June 13, 2018, Plaintiff Stiehler was involved in an accident while

operating the insured vehicle.  As a result of that accident, Plaintiff Stiehler filed a property damage claim with Defendant GEICO General.

64.    Following the filing of his claim, GEICO determined that Plaintiff Stiehler's vehicle was a total loss with an underlying value of $14,781.00, plus various condition adjustments and pre-tax adjustments.  A copy of GEICO's Total Loss Explanation Letter to Plaintiff Stiehler is attached as Exhibit F hereto.

65.    In paying the claim, GEICO did not pay the costs of title transfer fees or tag transfer fees.

66.    Plaintiff Stiehler was owed the cost of a title transfer fee in the amount of $50 and tag transfer fees in the amount of $10.

67.    GEICO breached its contract with Plaintiff Stiehler by not including the cost of title transfer fees or tag transfer fees in making the Actual Cash Value payment for Plaintiff's total loss.

**E.**    ***GEICO's Corporate Structure***

68.    Government Employees, GEICO General, and GEICO Indemnity are all subsidiaries, along with GEICO Casualty Co. ("GEICO Casualty"), of GEICO Corp.

69.    GEICO Corp. is an insurance holding company that conducts insurance and insurance-related activities through Government Employees, GEICO General, GEICO Indemnity, and GEICO Casualty (collectively, the "Subsidiaries").

70.    The Subsidiaries are all incorporated in Maryland, headquartered at 5620 Western Avenue, Chevy Chase, Maryland, and authorized to provide insurance in the State of New York.

71.    GEICO Corp. provides the policies, implements the underwriting, sets the premium rate, and determines the claims handling processes to be applied for each Subsidiary.

72. Upon information and belief, the Subsidiaries offer New York automobile insurance policies that include materially identical policy language, implement the same settlement practices and procedures, and conduct the same underwriting procedures.

73. There are no differences among the Subsidiaries relating to claims handlers, adjusters, or underwriters. In other words, the same claims handlers and adjusters handle claims for all Subsidiaries and the same underwriters underwrite policies for all Subsidiaries.

74. Simply stated, there are no substantive differences between the Subsidiaries relating to contractual agreements with insureds, handling claims, and setting premiums. GEICO Corp. implements and imposes all issues and terms related to policies and claims, and does so identically across and among all the Subsidiaries.

75. Thus, Defendants are engaged in a common scheme with respect to the calculation of Actual Cash Value payments for total loss automobile insurance claims in the State of New York.

76. Defendants use the acronym GEICO to refer to each of the Subsidiaries without distinction.

77. GEICO insureds initially deal with GEICO Corp., which offers to provide an insurance policy in exchange for a given premium rate. If the consumer accepts the offer, GEICO Corp. then offers the insured an insurance contract through one of its Subsidiaries.

78. GEICO Corp. determines the Subsidiary through which it will provide insurance to a given insured based on risk status, credit score, age and various other factors. For example, low-risk insureds are placed within a certain subsidiary, while high-risk insureds are placed within another. The insured has no role in choosing the GEICO Subsidiary through which he will receive insurance.

79. As an example, one way in which an insured can contract with GEICO Corp. is by applying for a policy online. The website geico.com is owned by GEICO Corp. Based on the online application, GEICO Corp., if the insured is deemed eligible, offers an insurance policy for a given premium. If accepted, the insured is then provided an agreement bearing the name of a specific Subsidiary.

80. Another way in which an insured can contract with GEICO Corp. is through direct contact with a GEICO salesperson over the phone. Salespersons and customer representatives are all employed by GEICO Corp. The same process – an application and credit check, followed by offer of a policy for a given premium – occurs, after which the insured is provided an agreement bearing the name of a specific Subsidiary.

81. GEICO Corp. operates and conducts its insurance practices through the use of the Subsidiaries, and said Subsidiaries operate as alter egos of GEICO Corp.

82. The Subsidiaries are all wholly-owned subsidiaries of GEICO Corp., and there is a unity of interest and ownership between GEICO Corp. and each of the Subsidiaries.

83. Treating GEICO Corp. as a separate corporation from each of the Subsidiaries would promote injustice by allowing GEICO Corp. to profit from its scheme, which it directs and which it facilitates through its Subsidiaries, of not paying the total amount of the Actual Cash Value promised by its contracts.

84. As an alternative to existing as alter egos, the Subsidiaries serve as the agents of GEICO Corp. for the purpose of contracting with Plaintiffs and the other Class members, as alleged herein. GEICO Corp. expressly authorizes the Subsidiaries to contract with Plaintiffs and the other Class members as alleged herein, and to promise the Plaintiffs and other Class members the payment of Actual Cash Value on first-party total loss physical damage claims.

## V.    CLASS ACTION ALLEGATIONS

85.     Plaintiffs brings this action pursuant to Rules 23(a), 23(b)(2), and, and 23(b)(3) of

the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

86.     Plaintiffs seek to represent a class (the "GEICO Class") defined as:

> All persons: (a) who insured a vehicle for physical damage coverage under an
> New York automobile insurance policy issued by GEICO Casualty Co., GEICO
> Indemnity, Government Employees, or GEICO General that provided for an
> Actual Cash Value payment in the event that a vehicle was declared a total loss,
> (b) who made a claim under the policy for physical damage, (c) whose claim was
> adjusted as a total loss within the six-year time period prior to the date on which
> this lawsuit was filed until the date of any certification order, and (d) whose claim
> payment did not include total loss vehicle value ("TLVV") sales tax, and/or title
> transfer fees, and/or tag transfer fees.

87.     Plaintiffs Sharofsky Stiehler, and Habberfield further seek to represent a subclass

(the "GEICO General Subclass") defined as:

> All persons: (a) who insured a vehicle for physical damage coverage under an
> New York automobile insurance policy issued by GEICO General that provided
> for an Actual Cash Value payment in the event that a vehicle was declared a total
> loss, (b) who made a claim under the policy for physical damage, (c) whose claim
> was adjusted as a total loss within the six-year time period prior to the date on
> which this lawsuit was filed until the date of any certification order, and (d)
> whose claim payment did not include title transfer fees and/or tag transfer fees.

88.     Plaintiff Candelario further seeks to represent a subclass (the "Government

Employees" Subclass) defined as:

> All persons: (a) who insured a vehicle for physical damage coverage under an
> New York automobile insurance policy issued by Government Employees that
> provided for an Actual Cash Value payment in the event that a vehicle was
> declared a total loss, (b) who made a claim under the policy for physical
> damage, (c) whose claim was adjusted as a total loss within the six-year time
> period prior to the date on which this lawsuit was filed until the date of any
> certification order, and (d) whose claim payment did not include title transfer
> fees and/or tag transfer fees.

89.     Plaintiff Barlow further seeks to represent a subclass (the "GEICO Indemnity"

Subclass) defined as:

> All persons: (a) who insured a vehicle for physical damage coverage under an New York automobile insurance policy issued by GEICO Indemnity that provided for an Actual Cash Value payment in the event that a vehicle was declared a total loss, (b) who made a claim under the policy for physical damage, (c) whose claim was adjusted as a total loss within the six-year time period prior to the date on which this lawsuit was filed until the date of any certification order, and (d) whose claim payment did not include total loss vehicle value ("TLVV") sales tax, and/or title fees, and/or tag transfer fees.

90.     Excluded from the Class and Subclasses defined above (collectively, the "Class") are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members.  Plaintiffs reserve the right to modify or amend the definitions of the Class and Subclasses, as appropriate, during the course of this litigation.

91.     This action has been brought and may properly be maintained on behalf of the Class and Subclasses proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

92.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class and Subclasseds are so numerous that individual joinder of all Class members is impracticable.  While Plaintiffs are informed and believe that there are thousands of Class members, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Defendants' books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

93.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.   whether GEICO's agreement to pay Actual Cash Value in the event of total loss obligated GEICO to pay sales tax, title fees, and tag transfer fees to Plaintiffs and the other Class members;

b.   whether GEICO breached its contracts with Plaintiffs and the other Class members; and

c.   the amount and nature of relief to be awarded to Plaintiffs and the other Class members.

94.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other members of the Classes were all similarly affected by GEICO's failure to pay sales tax, title transfer fees, and/or tag transfer fees under New York Policies that provided for an Actual Cash Value payment in the event of total loss.  Plaintiffs' claims are based upon the same legal theories as those of the other Class members.   Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which GEICO engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other members of the Class.

95.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members whom Plaintiffs seek to represent, Plaintiffs retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to include sales tax, title transfer fees, and tag transfer fees in total loss situations, and

Plaintiffs intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

96.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**
GEICO has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of both Classes as a whole.

97.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against GEICO, so it would be impracticable for the Class members to individually seek redress for the wrongful conduct.  Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CLAIMS FOR RELIEF

**A.    *Claim Brought on Behalf of the GEICO Class***

### COUNT I
### BREACH OF CONTRACT AGAINST GEICO CORP.

98.    Plaintiffs Barlow, Candelario, Habberfield, Sharofsky, and Stiehler (collectively, "Plaintiffs") incorporate by reference the allegations set forth in paragraphs 1-97.

99.    Plaintiffs brings this claim individually and on behalf of the GEICO Class members against GEICO Corp..

100.    Plaintiffs and each of the other GEICO Class members were parties to insurance contracts with GEICO, as described herein.

101.    Plaintiffs and each of the other GEICO Class members' insurance contracts with GEICO are governed by New York law.

102.    Plaintiffs and each of the other GEICO Class members made claims under their insurance contracts with GEICO, which GEICO determined to be first-party total losses under the insurance contract, and which GEICO determined to be covered claims.

103.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Plaintiffs and each of the other GEICO Class members were each owed the Actual Cash Value of their vehicles, which includes sales tax, title transfer fees, and tag transfer fees.

104.    GEICO failed to pay the requisite costs of sales tax, title transfer fees, and/or tag transfer fees to Plaintiffs and each of the other GEICO Class members on their total loss claims.

105.    GEICO's failure to pay the requisite costs of sales tax, title transfer fees, and/or tag transfer fees constitutes a material breach of GEICO's contracts with Plaintiffs and each of the other GEICO Class members.

106.    As a result of GEICO's contractual breaches, Plaintiff and each of the other GEICO Class members have been damaged, and are entitled under GEICO's insurance contracts to sums representing the benefits owed for sales tax, title transfer fees, and tag transfer fees, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

**B.**    ***Claim Brought on Behalf of the GEICO General Subclass***

**COUNT II**
**BREACH OF CONTRACT AGAINST GEICO CORP. AND GEICO GENERAL**

107.    Plaintiffs Sharofsky Stiehler, and Habberfield ("Plaintiffs," for purposes of this Count") incorporate by reference the allegations set forth in paragraphs 1-97.

108.    Plaintiffs bring this claim individually and on behalf of the GEICO General Subclass members against GEICO Corp. and GEICO General.

109.    Plaintiffs and each of the other GEICO General Subclass members were parties to insurance contracts with GEICO Corp. and GEICO General, as described herein.

110.    Plaintiffs and each of the other GEICO General Subclass members' insurance contracts with GEICO Corp. and GEICO General are governed by New York law.

111.    Plaintiffs and each of the other GEICO General Subclass members made claims under their insurance contracts with GEICO Corp. and GEICO General, which GEICO Corp. and GEICO General determined to be first-party total losses under the insurance contract, and which GEICO Corp. and GEICO General determined to be covered claims.

112.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Plaintiffs and each of the other GEICO General Subclass members were each owed the Actual Cash Value of their vehicles, which includes sales tax, title transfer fees, and tag transfer fees.

113. GEICO Corp. and GEICO General failed to pay the requisite costs of sales tax, title transfer fees, and/or tag transfer fees to Plaintiffs and each of the other GEICO General Subclass members on their total loss claims.

114. GEICO Corp. and GEICO General's failure to pay the requisite costs of title transfer fees and/or tag transfer fees constitutes a material breach of the contracts with Plaintiffs and each of the other GEICO General Subclass members.

115. As a result of GEICO Corp. and GEICO General's contractual breaches, Plaintiffs and each of the other GEICO General Subclass members have been damaged, and are entitled under his or her insurance contract to sums representing the benefits owed for title transfer fees and tag transfer fees, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

C. ***Claim Brought on Behalf of the Government Employees Subclass***

**COUNT III**
**BREACH OF CONTRACT AGAINST GEICO CORP. AND GOVERNMENT EMPLOYEES**

116. Plaintiff Candelario ("Plaintiff," for purposes of this Count") incorporates by reference the allegations set forth in paragraphs 1-97.

117. Plaintiff brings this claim individually and on behalf of the Government Employees Subclass members against GEICO Corp. and Government Employees.

118. Plaintiff and each of the other Government Employees Subclass members were parties to insurance contracts with GEICO Corp. and Government Employees, as described herein.

119.    Plaintiff and each of the other Government Employees Subclass members' insurance contracts with GEICO Corp. and Government Employees are governed by New York law.

120.    Plaintiff and each of the other Government Employees Subclass members made claims under their insurance contracts with GEICO Corp. and Government Employees, which GEICO Corp. and Government Employees determined to be first-party total losses under the insurance contract, and which GEICO Corp. and Government Employees determined to be covered claims.

121.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Plaintiff and each of the other Government Employees Subclass members were each owed the Actual Cash Value of their vehicles, which includes sales tax, title transfer fees, and tag transfer fees.

122.    GEICO Corp. and Government Employees failed to pay the requisite costs of title transfer fees and/or tag transfer fees to Plaintiff and each of the other Government Employees Subclass members on their total loss claims.

123.    GEICO Corp. and Government Employees' failure to pay the requisite costs of sales tax, title transfer fees, and/or tag transfer fees constitutes a material breach of the contracts with Plaintiff and each of the other Government Employees Subclass members.

124.    As a result of GEICO Corp. and Government Employees' contractual breaches, Plaintiff and each of the other Government Employees Subclass members have been damaged, and are entitled under his or her insurance contract to sums representing the benefits owed for title transfer fees and tag transfer fees, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

D.      *Claim Brought on Behalf of the GEICO Indemnity Subclass*

**COUNT IV**
**BREACH OF CONTRACT AGAINST GEICO CORP. AND GEICO INDEMNITY**

125.    Plaintiff Barlow ("Plaintiff," for purposes of this Count") incorporate by reference the allegations set forth in paragraphs 1-97.

126.    Plaintiff brings this claim individually and on behalf of the GEICO Indemnity Subclass members against GEICO Corp. and GEICO Indemnity.

127.    Plaintiff and each of the other GEICO Indemnity Subclass members were parties to insurance contracts with GEICO Corp. and GEICO Indemnity, as described herein.

128.    Plaintiff and each of the other GEICO Indemnity Subclass members' insurance contracts with GEICO Corp. and GEICO Indemnity are governed by New York law.

129.    Plaintiff and each of the other GEICO Indemnity Subclass members made claims under their insurance contracts with GEICO Corp. and GEICO Indemnity, which GEICO Corp. and GEICO Indemnity determined to be first-party total losses under the insurance contract, and which GEICO Corp. and GEICO Indemnity determined to be covered claims.

130.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Plaintiff and each of the other GEICO Indemnity Subclass members were each owed the Actual Cash Value of their vehicles, which includes sales tax, title transfer fees, and tag transfer fees.

131.    GEICO Corp. and GEICO Indemnity failed to pay the requisite costs of sales tax, title transfer fees, and/or tag transfer fees to Plaintiff and each of the other GEICO Indemnity Subclass members on their total loss claims.

132.    GEICO Corp. and GEICO Indemnity's failure to pay the requisite costs of sales tax, title transfer fees, and/or tag transfer fees constitutes a material breach of the contracts with Plaintiff and each of the other GEICO Indemnity Subclass members.

133.    As a result of GEICO Corp. and GEICO Indemnity's contractual breaches, Plaintiff and each of the other GEICO Indemnity Subclass members have been damaged, and are entitled under his or her insurance contract to sums representing the benefits owed for sales tax, title transfer fees, and tag transfer fees, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## VII.    <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs Barlow, Candelario, Habberfield, Sharofksy, and Sitehler, individually and on behalf of the other Class and Subclass members, respectfully request that the Court enter judgment in their and the Class and Subclass members' favor and against Defendants, as follows:

a.    An order certifying the proposed Class and/or Subclasses, as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiff's undersigned attorneys as Class Counsel;

b.    An award of compensatory damages, and all other available damages, for Plaintiffs and the other Class and Subclass members, as well as pre- and post- judgment interests on any amounts awarded;

c.    An order enjoining Defendants from continuing the illegal practices alleged herein, and for other injunctive relief as is proven appropriate in this matter;

d.    An award of attorney's fees, expenses, and costs of suit as appropriate pursuant to applicable law

e.      An order providing such other and further forms of relief as this Court deems just

and proper.

### VIII.   JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated:  June 5, 2019

Respectfully submitted,

By *Justin Nematzadeh*_____
Justin Nematzadeh
**DICELLO LEVITT GUTZLER LLC**
444 Madison Avenue, Fourth Floor
New York, New York  10022
Telephone:  646-933-1000

Adam J. Levitt*
Daniel R. Ferri*
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com

Edmund A. Normand*
Jacob Phillips*
**NORMAND LAW, PLLC**
62 West Colonial Street, Suite 209
Orlando, Florida  32814
Telephone:  407-603-6031
ed@ednormand.com
jacob@ednormand.com

Scott Edelsberg*
**EDELSBERG LAW, PA**
2875 NE 191ST St #703
Aventura, Florida  33180
Telephone: 305-975-3320
scott@edelsberglaw.com

Andrew Shamis*

**SHAMIS & GENTILE, P.A.**
14 N.E 1st Ave Ste. 1205
Miami, Florida  33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

***Counsel for Plaintiffs***
***and the Proposed Class***

*motion for admission *pro hac vice* pending