UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
PETER BARLOW; AUDREY
CANDELARIO; LAURA HABBERFIELD;
GREGORY SHAROFSKY; and BRIAN
STIEHLER, *individually and on behalf of all others similarly situated*,

         **MEMORANDUM & ORDER**
         19-CV-3349 (PKC) (RML)

      Plaintiffs,

  - against -

GOVERNMENT EMPLOYEES INSURANCE
COMPANY; GEICO GENERAL
INSURANCE COMPANY; and GEICO
INDEMNITY COMPANY,

      Defendants.
---------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

  Plaintiffs bring this putative class-action lawsuit, alleging a breach of contract, on behalf of themselves and others insured under Defendants' private passenger auto physical damage policies (the "Policy"). Before the Court is Defendants Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company (collectively "GEICO")'s partial motion to dismiss part of Plaintiffs' amended complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). For the reasons stated herein, GEICO's motion is granted in part, and denied in part as moot.

1

# BACKGROUND[1]

Plaintiffs and putative class members each paid for car insurance under the Policy, and each suffered a car accident that gave rise to a claim for property damage. (Amended Complaint ("Am. Compl."), Dkt. 10, ¶¶ 34–66.) Although GEICO declared each of Plaintiffs' vehicles to be complete losses, it would not reimburse Plaintiffs for the costs of title transfer fees and tag transfer fees necessary to secure a new vehicle. (*Id.*) Plaintiffs allege, *inter alia*, that the failure to reimburse Plaintiffs these fees amounts to a breach of the Policy and therefore a breach of contract. (Plaintiffs' Brief ("Pls.' Br."), Dkt. 21, at 2.)

## I. Physical Damage Coverages Under the Policy

Section III of the Policy sets forth the "Physical Damage Coverages," i.e., "Protection for Loss of or Damage to [Insured's] Car." (*See* GEICO Policy, Dkt. 10-1, at ECF[2] 36-39.) Coverage options under the Policy are for "comprehensive" loss," "collision loss," or both. (*Id.* at ECF 37.) Section III contains the following definitions:

> **3. *Collision*** means ***loss*** caused by upset of the ***owned auto*** or its collision with another object, including an attached vehicle.
>
> **4. *Comprehensive*** means ***loss*** caused other than by ***collision*** and includes but is not limited to the following causes:
>
> (a) missiles; (b) falling objects; (c) fire; (d) lightning; (e) theft; (f) larceny; (g) explosion; (h) earthquake; (i) colliding with a bird or animal; (j) windstorm; (k) hail; (l) water; (m) flood; (n) malicious mischief; (o) vandalism; (p) riot; or (q) civil commotion.

\*   \*   \*

---

[1] For purposes of this Memorandum & Order, the Court assumes the truth of the non-conclusory, factual allegations contained within Plaintiffs' Complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

    **9.** *Loss* means direct and accidental loss of or damage to:

      (a) the auto, including its equipment; or
      (b) other insured property.

(*Id.* at ECF 36.)[3]

Regarding collision loss, GEICO agreed to pay "for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible." (*Id.* at ECF 37.) As to comprehensive loss, GEICO agreed to pay "for each loss, less the applicable deductible, caused other than by *collision*, to the *owned* or *non-owned auto*." (*Id.*) GEICO, however, placed limits on its "liability for loss," including, as relevant here, limiting GEICO's liability to the actual cash value [("ACV")] of the property at the time of the loss." (*Id.* at ECF 38 (emphasis omitted).) Under the Policy, ACV is defined as "the replacement cost of the auto or property less depreciation or betterment." (*Id.* at ECF 36 (emphases omitted).)

## II. The Instant Action

Plaintiffs maintain that, because payment of sales tax, title, and license plate transfer fees are required in New York in connection with the purchase of any vehicle, they are part of the replacement cost of any vehicle and, consequently, part of the total-loss vehicle value that should be paid by GEICO under the Policy. (Am. Compl, Dkt. 10, ¶¶ 4, 5, 7.) In other words, these ancillary fees must be included when calculating the ACV and reimbursement owed to Plaintiffs. Based on this interpretation of the Policy, Plaintiffs assert that by refusing to pay the costs of title transfer fees and tag transfer fees that Plaintiffs incurred in purchasing their replacement vehicles, GEICO failed to fulfill its contractual obligations under the Policy.

---

[3] All bolding and italicization of Policy language are in the original.

3

On October 18, 2019, GEICO filed a motion to partially dismiss Plaintiffs' claims asserting that (1) "Plaintiffs have not adequately alleged a provision of the Policies providing coverage for fees or a breach of a Policy provision caused by GEICO's alleged non-payment of fees because under New York law a totaled vehicle's [ACV] does not include title or tag fees"; and (2) "Plaintiff Candelario has not adequately alleged her claim for non-payment of sales tax because Plaintiffs concede that she was paid sales tax in relation to her claim."[4] (Defs.' Br., Dkt. 19-1, at 4.) GEICO's motion was fully briefed on October 18, 2019, with the parties subsequently submitting letters outlining supplemental authority in January, July, and August 2020. (Dkts. 22, 23, 25, 26, 28, 29.)

## LEGAL STANDARD

### I.   Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Determining

---

[4] Although "Plaintiff Barlow challenges GEICO['s] [] failure to pay him sales tax in settling his total loss claim[,] . . . [GEICO] does not seek dismissal of that claim at this time." (Defs.' Br., Dkt. 19-1, at 2 n.1.)

4

whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).  In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp.*, 712 F.3d at 717 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks and citation omitted)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Pension Benefit Guar. Corp.*, 712 F.3d at 717 (quoting *Iqbal*, 556 U.S. at 679).

## II.     Breach of Contract

"Under New York law, to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015) (internal quotation marks and citations omitted); *see also Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (holding same).  A complaint alleging a breach-of-contract must "identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached." *Wallert*, 141 F. Supp. 3d at 286.  "While these elements need not be separately pleaded, failure to allege them will result in dismissal.  Courts have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*." *Speedfit*

5

*LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 578 (E.D.N.Y. 2014) (internal quotation marks and citations omitted).

## DISCUSSION

The central issue presented by Defendants' motion is whether ACV, as defined in the Policy, includes license and title fees that are required by state law for replacement vehicles purchased by policyholders after the total loss of their covered vehicles due to collision. This case appears to be the first to address this issue in this Circuit.[5]

**I.     New York Law Governs**

The law that governs in this case is that of the State of New York—a fact undisputed by the parties. (*See* Defs.'s Br., Dkt. 19-1, at 1 ("Plaintiffs' claims relating to title and tag fees should be dismissed because GEICO has fulfilled its obligation for payment of first-party benefits under the applicable insurance policies and New York law."); Pls.' Br., Dkt. 21, at 1–2 ("GEICO has

---

[5] The Court notes that similar claims have been brought in multiple jurisdictions across the country, with different outcomes. *See, e.g.*, *Sigler v. GEICO Cas. Co.*, 967 F.3d 658, 661–62 (7th Cir. 2020) (applying Illinois law to affirm the District Court's dismissal of Plaintiff's contract claim); *Singleton v. Elephant Ins. Co.*, 953 F.3d 337–39 (5th Cir. 2020) (holding, pursuant to Texas law, that ACV is defined as "fair market value" and does not include taxes and fees); *Davis v. GEICO Cas. Co.*, No. 19-CV-2477 (GCS), 2020 WL 68573, at *6 (S.D. Ohio Jan. 7, 2020) (denying Defendant's motion to dismiss under Ohio law because "there is some question as to whether the [ACV] at the time of the loss . . . actually includes sales tax, title-transfer fees, and registration fees"); *Glover v. Liberty Mut. Ins. Co.*, No. 19-CV-219 (CMA), 2019 WL 4917063, at *6–7 (S.D. Fla. Oct. 4, 2019) (construing Florida's Insurance Statute to define ACV as including sales tax and ancillary fees); *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1079 (M.D. Fla. 2019) ("When faced with a policy leaving [ACV] undefined, Florida courts have found the term to mean replacement cost minus depreciation."); *Coleman v. Garrison Prop. & Cas. Ins. Co.*, No. 19-CV-1745 (VMK), 2019 WL 3554184, at *2–3 (N.D. Ill. July 31, 2019) (applying Illinois law and dismissing plaintiff's breach of contract claims based on finding that ACV policy provision did not include repayment of sales tax and title transfer fees); *Jones v. Gov't Empls. Ins. Co.*, Nos. 17-CV-891, 17-CV-1755 (ORL) (LRH), 2019 WL 3254207, at *3–4 (M.D. Fla. July 19, 2019) (finding that, under Florida law and pursuant to an insurance policy substantially similar to the one at issue in this case, GEICO was responsible for paying title and tag transfer fees as part of the ACV). Because, as discussed *infra*, the governing law in this case is New York law, the above-cited decisions, which are based on the laws of different states, provide limited guidance here.

breached its contracts with Plaintiffs by not paying the entirety of the amounts promised to Plaintiffs under its private passenger auto policy. . . . In New York, sales tax, title transfer fees, and tag transfer fees are all costs that must be incurred in replacing a vehicle." (internal citations omitted)).) "In a diversity case, where the parties have agreed to the application of the forum law—as evidenced by reliance on that law in the parties' briefing, as in this case—their agreement ends the choice-of-law inquiry." *Bennett v. Sterling Planet, Inc.*, 546 F. App'x 30, 33 (2d Cir. 2013) (summary order).

**II.     "Actual Cash Value" Does Not Include License and Title Fees**

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 89 (2d Cir. 2012) (footnote omitted). "In New York, if a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence." *LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005) (internal quotation marks, alterations, citation, and footnote omitted); *see also Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) ("The initial interpretation of a contract is a matter of law for the court to decide." (internal quotation marks and alterations omitted)). "The key inquiry at this initial interpretation stage is whether the contract is unambiguous with respect to the question disputed by the parties." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).

Plaintiffs assert that the policy language, on its own, answers the question before the Court. They argue that since the policy defines the ACV as "the replacement cost of the auto or property less depreciation or betterment," and Plaintiffs' vehicles were declared total losses, the "replacement" cost necessarily includes title and transfer fees, since those are mandatory for replacement vehicles under New York law. (Pls.' Br., Dkt. 21, at 3.) The Court disagrees.

7

The policy language relied on by Plaintiffs does not govern the coverage that GEICO agreed to provide under the Policy for collision loss. Rather, the section that does, "Losses We Will Pay for You," merely obligates GEICO to pay for "***collision loss*** to the ***owned*** or ***non-owned*** auto for the amount of each ***loss*** less the applicable deductible," and for loss to personal effects "up to $200 per occurrence, less the applicable deductible," with "loss" defined as "direct and accidental loss of or damage to the auto, including its equipment[] or . . . other insured property." (GEICO Policy, Dkt. 10-1, at ECF 37.) This definition of compensable loss under the Policy does not refer to "replacement value" or to any of the fees or costs that Plaintiffs seek to recoup. Furthermore, to the extent the Policy does specify additional payments that GEICO will make under the physical damage coverages, these payments notably do not include title or tag fees either. (*Id.* (specifying "additional payments" that GEICO would pay as transportation expenses and salvage charges).) Thus, there is no ambiguity in the Policy's coverage provisions that tag and title fees and costs for an insured's replacement vehicle are not reimbursable.

Instead of focusing on the coverage portion of Section III, Plaintiffs instead rely on the Limit of Liability portion, which references ACV, as demonstrating that GEICO is responsible for paying the "replacement cost" of the insured's new vehicle, which necessarily includes tag and title fees since those are required under New York law when purchasing a new car. However, this part of the Policy imposes a *limit* on GEICO's loss liability and not an obligation on GEICO to cover the ACV or all "replacement costs." *See Sigler*, 967 F.3d at 660 ("[The plaintiff's] argument [regarding the ACV definition in the policy] misconstrues a limitation on liability as a promise to pay.") As the court in *Sigler* explained:

> Put slightly differently, [Plaintiffs] mistake[] a liability ceiling for a floor. The Limit of Liability section of the policy doesn't promise to pay these costs regardless of whether the insured incurs them; it simply describes the most that GEICO will pay in the event of a covered loss. To repeat: the coverage-granting language says

8

> only that GEICO will pay for the "collision loss to the owned or non-owned auto," with "loss" defined as "direct and accidental loss of or damage to" an insured vehicle or "[o]ther insured property."

*Id.* Furthermore, while the term "replacement cost" could be colloquially understood as all expenses Plaintiffs must pay to obtain a new car and to encompass the entire ACV (*see* Pls.' Br., Dkt. 21, at 3–4), that colloquial understanding does not govern contract interpretation.

In addition, under New York law, the Policy is not deemed to be silent on the question of title costs and fees. In New York, the "applicable provisions of Insurance Law are deemed to be part of an insurance contract as though written into it." *Trizzano v. Allstate Ins. Co.*, 780 N.Y.S. 2d 147, 147 (App. Div. 2004) (internal quotation marks and alterations omitted); *see also Patchen v. Gov't Emp'rs Ins. Co.*, 759 F. Supp. 2d 241, 245 (E.D.N.Y. 2011) ("However, helpful in this regard is the New York State Insurance Law, which the parties agree supplements the parties' contract 'as though written into it.'" (citation omitted)). Plaintiffs' argument that the rules and regulations of the New York State Department of Financial Services ("DFS")[6] relied upon by GEICO—specifically Regulation 64 of the New York Insurance Law, 11 N.Y.C.R.R. § 216.6(a)—are irrelevant to the Court's interpretation of the insurance policies at issue (Pls.' Br., Dkt. 21, at 6–8), is contrary to settled law. Indeed, in *Milligan v. GEICO General Insurance Co.*, for example, the district court, quoting *Trizzano*, treated Regulation 64 as part and parcel of GEICO's insurance policy. No. 16-CV-240 (JMA) (GRB), 2017 WL 9939046, at *4 (E.D.N.Y. July 14, 2017), *report and recommendation adopted*, 2018 WL 3632690 (E.D.N.Y. Mar. 31, 2018), *aff'd sub nom. on other grounds*, *Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146 (2d Cir. 2019).

---

[6] DFS, formed in 2011 when the State consolidated the New York State Banking Department and the New York State Insurance Department, "supervises the activities of . . . insurance companies . . . that do business in New York." *Cassoli v. Am. Med. & Life Ins. Co.*, No. 14-CV-9379 (SHS), 2015 WL 3490688, at *1 n.1 (S.D.N.Y. June 2, 2015).

9

As relevant here, Regulation 64 specifically explains that "actual cash value," "unless otherwise specifically defined by law or policy" is defined as:

> the lesser of the amounts for which the claimant can reasonably be expected to:
>
> (1) repair the property to its condition immediately prior to the loss; or
>
> (2) replace it with an item substantially identical to the item damaged. Such amount shall include all monies paid or payable as sales taxes on the item repaired or replaced. This shall not be construed to prevent an insurer from issuing a policy insuring against physical damage to property, where the amount of damages to be paid in the event of a total loss to the property is a specified dollar amount.

11 N.Y.C.R.R. § 216.6(b); *see also id.* § 216.6(a) (providing that "[i]n any case where there is no dispute as to coverage, it shall be the duty of every insurer to offer claimants . . . amounts which are fair and reasonable as shown by its investigation of the claim, providing the amounts so offered are within policy limits and in accordance with the policy provisions").[7]

In 2008, a New York General Counsel Opinion reiterated a prior 2001 decision by DFS,[8] further clarifying what items are compensable as part of ACV:

---

[7] Responsibility for administering the Insurance Law rests with the Superintendent of DFS, who has broad power to interpret, clarify, and implement the legislative policy. The Superintendent's interpretation, if not irrational or unreasonable, will be upheld in deference to her special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision.

*N.Y. State Land Title Assoc., Inc. v. N.Y.S. Dep't of Fin. Servs.*, 92 N.Y.S. 3d 49, 54 (App. Div. 2019) (internal quotation marks, alterations, and citations omitted) (quoting *Matter of Med. Soc'y of State of N.Y. v. Serio,* 800 N.E.2d 728 (N.Y. 2003)).

[8] "It is well established that [courts] defer to an agency's construction of a statute when 'the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices.'" *Spagnola v. Chubb Corp.*, 574 F.3d 64, 68–69 (2d Cir. 2009) (finding "[s]everal opinions from the New York Department of Insurance . . . instructive") (quoting *N.Y. State Ass'n of Life Underwriters, Inc. v. N.Y. State Banking Dep't*, 632 N.E. 2d 876, 879 (N.Y. 1994)); *see also LaCroix v. Syracuse Exec. Air Serv., Inc.*, 866 N.E. 2d 1004, 1005–06 (N.Y. 2007) ("Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, we regularly defer to the agency responsible for its administration, unless that

> An insurance company is not required under the New York Insurance Law or regulations promulgated thereunder to include title transfer costs associated with the purchase of a replacement vehicle in determining the actual cash value of a motor vehicle that has suffered a total loss. However, there is also no prohibition in paying that extra sum as a component of loss, so long as it is done in a uniform and non-discriminatory manner.
>
> \* \* \* \*
>
> Accordingly, in calculating the actual cash value of a vehicle upon a total loss where the claimant elects to retain the salvage, the definition of actual cash value in § 216.6(b)(2) specifies that the cost of replacement includes sales tax. The salvage value of the insured vehicle upon a total loss is a deduction from its actual cash value and, therefore, it is taken after the sales tax has already been added into the calculation of the vehicle's replacement cost. . . .

New York General Counsel Opinion No. 10-30-2008, 2008 WL 4966645 (N.Y. Ins. Bul.) (reiterating that "there is no requirement in the New York Insurance Law or Regulation 64 that an insurance company include a title transfer fee in the calculation of an automobile's actual cash value in New York. But there is also no prohibition in paying such fee as a component of loss, as many insurers do so long as it is done in a uniform and non-discriminatory manner").

The Policy does not explicitly provide for reimbursement of license and tag fees as part of the ACV. Regulation 64, effectively written into the Policy, while providing for reimbursement of sales tax, does not require payment of ancillary fees, such as license and tag fees. Accordingly, the Court finds that the Policy unambiguously does not require GEICO to pay the claimed ancillary fees under the Policy, and dismisses Plaintiffs' claims for license and tag fees.

---

determination is irrational or unreasonable." (internal quotation marks and citation omitted)); *cf. Milich v. State Farm Fire & Cas. Co.*, No. 10-CV-5991 (DRH) (ARL), 2012 WL 4490531, at *4 (E.D.N.Y. Sept. 28, 2012) (deferring to DFS and relying on statutory practice commentaries, agency regulations, and a General Counsel administrative opinion to interpret New York State insurance law in a matter of first impression concerning the Workers' Compensation Law).

### III. Plaintiff Candelario Does Not Allege a Breach of Contract Claim for Failure to Pay Sales Tax

GEICO asks that Plaintiff Candelario's claim for breach of contract for failure to pay sales tax be dismissed, arguing that "[t]he Amended Complaint is bare of any allegation that [GEICO] fails to pay sales tax generally, or that sales tax was not paid to Plaintiff Candelario as part of her total loss claim." (Defs.' Br., Dkt. 19-1, at 7.)  It is clear from the face of the Complaint that such a claim was never asserted by Plaintiff Candelario (*see* Am. Compl., Dkt. 10, ¶ 48), a conclusion confirmed by Plaintiffs' response brief (*see* Pls.' Br., Dkt. 21, at 8).  GEICO's motion is therefore denied as moot.

### CONCLUSION

For the reasons stated herein the Court dismisses Plaintiffs' breach of contract claims for license and tag fees for failure to state a claim under Rule 12(b)(6), and denies as moot the motion to dismiss a breach of contract for failure to pay sales tax, as that claim was not included in the Amended Complaint.

          SO ORDERED.

          */s/ Pamela K. Chen*
          Pamela K. Chen
          United States District Judge

Dated: September 29, 2020
       Brooklyn, New York